COUSINEAU v FORD MOTOR COMPANY

Docket No. 69363. Submitted May 3, 1984, at Detroit.—Decided January 2, 1985.

Mark Cousineau, an employee of Jaeger Brothers Construction Co., was repairing a truck tire mounted on a three-piece wheel when the wheel explosively disengaged, striking and killing him. The tire which was on the wheel was subsequently used, and the rim parts of the wheel were at first kept separate, but were later mixed with the general rim stock of the business, rendering identification of the rim involved in the accident impossible. Thelma Cousineau, the personal representative of the estate of Mark Cousineau, deceased, filed a wrongful death suit against Ford Motor Company, International Harvester Company, Goodyear Tire & Rubber Company, Kelsey Hayes Corporation, The Budd Company, Firestone Tire & Rubber Company, Fruehauf Corporation and AMF, Inc., in Wayne Circuit Court. Jaeger Brothers owned trucks manufactured by Ford and International Harvester, at least one trailer manufactured by Fruehauf Trailer, and numerous tires and wheels manufactured by the other named defendants. Plaintiff's com-

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Summary Judgment § 23.

[2-4, 7] 29 Am Jur 2d, Evidence §§ 124, 134.
   30 Am Jur 2d, Evidence § 1121.
   57 Am Jur 2d, Negligence § 127.
   74 Am Jur 2d, Torts §§ 68, 76.
   Propriety and effect of jury's apportionment of damages as between tortfeasors jointly and severally liable. 46 ALR3d 801.

[3, 4, 7] 63 Am Jur 2d, Products Liability § 865.

[5] 63 Am Jur 2d, Products Liability §§ 180-184.

[6] 73 Am Jur 2d, Summary Judgment § 15.

[8, 10] 61A Am Jur 2d, Pleading §§ 310-312.

[9, 10] 61A Am Jur 2d, Pleading § 317.

[10] 5 Am Jur 2d, Appeal and Error § 795.
   61A Am Jur 2d, Pleading § 314.
   73 Am Jur 2d, Summary Judgment § 29.

[11] 16 Am Jur 2d, Conspiracy § 49.

[12] 16 Am Jur 2d, Conspiracy § 67.

[13] 74 Am Jur 2d, Torts § 68.

plaint alleged that the decedent's injuries resulted from negligent wheel design, failure to adequately warn, and failure to provide safety devices by the wheel manufacturers and that defendant vehicle manufacturers negligently produced and sold vehicles which required and/or utilized multi-piece wheels. Plaintiff's complaint also contained an allegation of breach of implied warranty. Plaintiff subsequently amended her complaint to also set forth claims of alternative liability and concert of action. The trial court, Irwin H. Burdick, J., granted summary judgment to all defendants except AMF and Fruehauf on the ground that plaintiff was unable to attribute the wheel in question to a particular wheel or vehicle manufacturer. AMF and Fruehauf did not move for summary judgment. Plaintiff, prior to the granting of summary judgment, moved for leave to amend her complaint to contain an allegation of civil conspiracy and a claim of enterprise liability and, after the granting of summary judgment, moved for reconsideration of the grant of summary judgment. Both motions were denied. Plaintiff appealed. *Held:*

1. The trial court correctly granted summary judgment in favor of defendants as to plaintiff's alternative liability claim. The theory of alternative liability is not applicable to the facts of this case.

2. The trial court erred in granting summary judgment on plaintiff's concert of action claim in favor of all the wheel manufacturer defendants except AMF. Plaintiff made a sufficient showing that defendant wheel manufacturers, with the exception of AMF, acted jointly in failing to warn of a danger in their products to survive their summary judgment motion.

3. The grant of summary judgment for defendant vehicle manufacturers on plaintiff's concert of action claim was proper since there was no showing that they acted jointly with the wheel manufacturers in failing to warn of a danger in the wheels.

4. The trial court did not abuse its discretion by refusing plaintiff leave to amend her complaint to include allegations of civil conspiracy. The proposed pleading was legally insufficient on its face.

5. The trial court correctly denied plaintiff leave to amend her complaint to contain a claim of enterprise liability. Enterprise liability is not recognized in Michigan.

6. The case is reversed and remanded for trial of plaintiff's concert of action claim against the wheel manufacturers, except defendant AMF. In all other respects, the judgment is affirmed.

Affirmed in part, reversed in part and remanded.

1. JUDGMENTS — SUMMARY JUDGMENT — ISSUES OF MATERIAL FACT.

   A plaintiff, when properly challenged by a motion for summary judgment on the ground that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, must establish that it has a case on the law and that there are some evidentiary proofs to support its allegation as to any material fact (GCR 1963, 117.2[3]).

2. NEGLIGENCE — BURDEN OF PROOF — MULTIPLE DEFENDANTS.

   A plaintiff's burden of proof may, in certain situations, be shifted to the defendants where more than one defendant has been negligent and the plaintiff is unable to prove which of the defendants' actions were the proximate cause of his injury.

3. PRODUCTS LIABILITY — BURDEN OF PROOF — ALTERNATIVE LIABILITY.

   A plaintiff in a products liability action, in order to shift the burden of proving which of several defendants caused his injury in fact under a theory of alternative liability, must show (1) that all the defendants have acted tortiously, (2) that plaintiff was harmed by one of the defendants, and (3) that plaintiff, through no fault of his own, is unable to identify which actor caused the injury.

4. PRODUCTS LIABILITY — BURDEN OF PROOF — ALTERNATIVE LIABILITY.

   The doctrine of alternative liability permits the shifting of the burden of proving causation in fact to the defendants in a products liability action so as to prevent the injustice of allowing proved wrongdoers to escape liability for an injury inflicted upon the innocent plaintiff where the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused the harm.

5. PRODUCTS LIABILITY — MOTOR VEHICLES — DEFECTIVE COMPONENT PARTS.

   A vehicle manufacturer is not liable for damages caused by defective component parts added to a vehicle subsequent to the vehicle's distribution.

6. JUDGMENTS — SUMMARY JUDGMENT — ISSUES OF MATERIAL FACT.

   A motion for summary judgment on the ground that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law should not be granted unless it is impossible for the claim asserted to be supported by evidence at trial (GCR 1963, 117.2[3]).

7. Products Liability — Concert of Action — Joint and Several Liability.

A plaintiff in a concert of action claim must prove that all the defendants acted tortiously pursuant to a common design, whether by express agreement or tacit understanding, and that the plaintiff was injured as a result of that action; it is not necessary that the plaintiff be unable to identify the specific defendant which caused his injury since each defendant is jointly and severally liable for the entire amount of damages.

8. Pleading — Amendment of Pleadings — Court Rules.

The grant or denial of a motion to amend a party's pleadings is within the discretion of the trial court (GCR 1963, 118.1).

9. Pleading — Summary Judgment — Amendment of Pleadings — Court Rules.

Entry of a grant of summary judgment in favor of the defendant does not preclude the court from permitting amendment of the plaintiff's complaint (GCR 1963, 118.1).

10. Pleading — Amendment of Pleadings — Failure to State a Claim.

Failure of a court to grant leave to amend a complaint is not reversible error where the pleadings as sought to be amended still fail to state a claim.

11. Conspiracy — Definition.

A conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful means.

12. Conspiracy — Allegations — Actionability.

An allegation of civil conspiracy, standing alone, is not actionable.

13. Torts — Negligence — Enterprise Liability.

Private tort action cannot be maintained under a theory of enterprise liability in Michigan.

*Robert A. Tyler, P.C.* (by *Robert A. Tyler*), for plaintiff.

*Harvey, Kruse, Westen & Milan, P.C.* (by *John A. Kruse* and *Dale R. Burmeister*), for Ford Motor Company.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Roger F. Wardle* and *Cynthia Cooper Adkinson*), for the Budd Company.

*Vandeveer, Garzia, Tonkin, Kerr, Heaphy, Moore, Sills & Poling, P.C.* (by *John J. Lynch* and *Robert D. Brignall*), for Goodyear Tire & Rubber Company.

*Butzel, Long, Gust, Klein & Van Zile, P.C.* (by *Xhafer Orhan, Daniel P. Malone* and *William L. Champion III*), for Firestone Tire & Rubber Company.

*Coticchio, Zotter & Sullivan, P.C.* (by *Timothy J. Sullivan*), for Kelsey Hayes Corporation and Fruehauf Corporation.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Dennis M. Haffey*), for International Harvester Company.

*Joselyn, Rowe, Jamieson, Grinnan, Hayes & Feldman, P.C.* (by *William A. Joselyn*), for AMF, Inc.

Before: GRIBBS, P.J., and HOOD and R. M. MAHER, JJ.

GRIBBS, P.J. Plaintiff appeals as of right from an order granting summary judgment for defendants on her wrongful death claim and a subsequent order denying her motion for reconsideration and denying her leave to amend her complaint. We affirm in part and reverse in part.

Plaintiff brought suit on October 29, 1980, alleging her son, Mark Cousineau, was killed on May 8, 1979, while repairing a truck tire mounted on a three-piece wheel. Decedent was an employee of

Jaeger Brothers Construction Co., which owned several trucks, including four or five made by Ford, two by International Harvester, and at least one Fruehauf trailer. In addition, Jaeger Brothers had numerous tires and wheels collected from other trucks at the workplace. On May 8, 1979, decedent, who had only been employed for two days, was assigned to repair truck tires. While decedent was working on a three-piece rim, the wheel explosively disengaged, striking and killing decedent. Ronald Jaeger found a three-piece rim held together by a safety chain at the accident site. The tire was still intact and was subsequently used. The rim parts were at first kept separate, but were later mixed with the general rim stock of the business, rendering identification of the rim involved in the accident impossible.

Plaintiff sued wheel manufacturers Goodyear, Kelsey Hayes, Budd, and Firestone, and vehicle manufacturers Ford and International Harvester. Plaintiff claimed decedent's injuries resulted from negligent wheel design, failure to adequately warn, and failure to provide safety devices by the wheel manufacturers. She further alleged that the defendant vehicle manufacturers negligently produced and sold vehicles which required and/or utlized multi-piece wheels. Plaintiff's complaint also contained an allegation of breach of implied warranty.

Goodyear and Kelsey Hayes moved for a more definite statement of the claim, stating that plaintiff "must be required to identify the manufacturer of the wheel and rim" involved in the accident and "must be ordered to identify one vehicle manufacturer".

Plaintiff filed an amended complaint and added Fruehauf (vehicle manufacturer) and AMF (wheel manufacturer) as defendants. In the amended com-

plaint, plaintiff set forth claims of alternative liability and concert of action.

All defendants except AMF and Fruehauf moved for summary judgment pursuant to GCR 1963, 117.2(1) and (3), based on plaintiff's inability to attribute the wheel in question to a particular wheel or vehicle manufacturer. Plaintiff admitted, then as now, that she could not identify the specific manufacturer of the subject wheel or the vehicle from which it came. Attached to the wheel manufacturers' motions were affidavits of their employees, each of whom averred that defendants' products are identifiable since they are stamped with a part number and name of the manufacturer. In addition, the affiants for Firestone and Budd stated that truck rims are distinguishable from one another because of the multiplicity of rim designs. International Harvester submitted an affidavit and company records showing that the International Harvester truck owned by decedent's employer was originally equipped with two-piece rims.

After two adjournments of the motion for summary judgment to permit discovery, plaintiff filed a response to the motions. She asserted that the named defendants included "the only major manufacturers" of three-piece wheels "similar to the one that plaintiff's decedent was handling at the time of his injury". Regarding the identification issue, plaintiff argued that the manufacturer's stamp "is subject to wear, rust and corrosion" which "obliterates the identification". Plaintiff contended that truck rims made by various defendants are "very similar in size and configuration", that "there was no one design that could be identified with one specific manufacturer", and that "the wheels are essentially of a generic design". Plaintiff also stated that the manufacturer of a wheel assembly

could not be determined "without the closest of examination".

In support of her alternative liability and concert of action claims, plaintiff submitted numerous documents obtained through discovery. The pertinent matter is summarized as follows:

The manufacturers of three-piece rims were made aware, through accident reports, of the problems arising from their products, but ascribed the problems to improper "shop practices". These practices included noncompliance with the manufacturers' recommended procedures for assembly, disassembly, and maintenance and safety precautions. Firestone urged vehicle manufacturers to print warning materials in the vehicle owner manual. However, the wheel manufacturers felt that printed warnings on the rim components themselves could be ineffective since they would be covered by corrosion. In a letter to Budd dated May 11, 1976, an attorney for Firestone denigrated the effectiveness of such warnings and further stated, "I would hate to be confronted by a plaintiff's lawyer with another company's warning if my product did not have one". The same letter proposed an industry meeting and urged that the different manufacturers not take varying positions on the warning issue.

Beginning in 1976, the wheel manufacturers, through the "Rubber Manufacturers Association" and "Multipiece Rim Manufacturers" organizations, campaigned for promulgation of federal OSHA standards governing work with multi-piece rims. Their goal was "to remove all of the burden from the Wheel and Rim manufacturers" and to place responsibility for safety precautions "on the only person in practical position to discharge such responsibility, *i.e.,* the employer". In April of 1980, OSHA promulgated a regulation requiring the

posting of information and warnings in truck tire maintenance facilities and the training of mechanics working with multi-piece wheels.

A Budd document dated February 2, 1976, noted the tendency of "standardization" in the truck rim industry and the dangers posed by the similarity of different products. It noted that, while some rim components manufactured by different companies were interchangeable, in some cases "mixed side rings are a definite safety hazard". The manufacturers exchanged information on part interchangeability so that charts could be formulated to guide mechanics on this problem.

The defendant vehicle manufacturers purchased substantial numbers of multi-piece rims for use as orignal equipment. The petition to OSHA indicates that 98% of all multi-piece rims sold are used as original equipment. However, there is nothing in the record to show that vehicle manufacturers, as opposed to wheel manufacturers, were involved in the OSHA petition campaign. References to defendant wheel manufacturer AMF were also absent from plaintiff's document, since AMF sold its truck rim subsidiary (Cleveland Welding Division) to Budd in 1959.

At the December 10, 1982, hearing on the motion for summary judgment, plaintiff argued that summary judgment would be premature, since discovery was not complete. Counsel for Goodyear replied that no amount of discovery would disclose the identity of the manufacturer of the wheel involved in the accident. In granting the motion in favor of defendants, the trial court stated, "We're not talking about a generic product that cannot be identified". Rather, the court concluded, "This is a case where the wheel that we're talking about disappeared".

Prior to the grant of summary judgment, plain-

tiff moved for leave to amend her complaint. She submitted a proposed third amended complaint containing an allegation of civil conspiracy, and a fourth amended complaint which advance a claim of "enterprise liability". *Hall v E I Du Pont De Nemours & Co, Inc,* 345 F Supp 353 (ED NY, 1972). At the hearing on the motions to amend, plaintiff conceded "there's no cause of action for conspiracy unless you've got an underlying cause". Plaintiff also requested reconsideration of the grant of summary judgment.

The trial court denied leave to amend the complaint without comment. It also denied the motion for reconsideration, distinguishing *Abel v Eli Lilly & Co,* 94 Mich App 59; 289 NW2d 20 (1979), *aff'd* 418 Mich 311; 343 NW2d 164 (1984).

## ALTERNATIVE LIABILITY

Plaintiff first contests the granting of the summary judgment for defendants on plaintiff's alternative liability claim. She argues that the theory of alternative liability applies where a plaintiff, through no fault of his own, cannot identify the specific defendant responsible for his injuries.

The trial court did not specify the court rule underlying its grant of summary judgment. It granted summary judgment because the wheel would be identifiable if it were available, basing this conclusion on plaintiff's admission and defendants' affidavits. Since the court went beyond the pleadings in reaching its decision, the judgment will be reviewed as granted pursuant to GCR 1963, 117.2(3). Under this court rule, the nonmoving party must establish that it has a case on the law and that there are some evidentiary proofs to support its allegation as to any material fact. *Durant v Stahlin,* 375 Mich 628, 638; 135 NW2d 392 (1965).

Substantial guidance is provided by the recent decision in *Abel,* in which the Supreme Court expressed formal approval of the theory of alternative liability. 418 Mich 329. As noted by this Court in *Greene v Union Optical Center, Inc,* 95 Mich App 167, 171; 290 NW2d 111 (1980), "[i]n certain situations, a plaintiff's burden of proof may be shifted to the defendants where more than one defendant has been negligent and the plaintiff is unable to prove which of the two defendants caused his injury". Prerequisite to such a shift, plaintiff must show, first, that all defendants acted tortiously; second, that plaintiff was harmed by one of the defendants; and, third, that plaintiff, "through no fault of [his or her] own, [is] unable to identify which actor caused the injury". *Abel,* 418 Mich 331-332. Plaintiff fastens her argument onto the latter language, ignoring the policy underlying alternative liability theory. That policy was clearly stated by the Court in the *Abel* opinion:

"[T]he reason for the exception to traditional rules is to prevent the injustice of allowing proved wrongdoers to escape liability for an injury inflicted upon an innocent plaintiff 'merely because *the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused the harm.'* " 418 Mich 327, citing 2 Restatement Torts, 2d, § 433B(3), Comment f, p 446 (emphasis added).

In *Abel,* the plaintiffs alleged they were harmed by their consumption of synthetic estrogens. 418 Mich 318. Their inability to identify the specific manufacturer which caused the harm resulted from the inherent nature of the product. Once ingested, the medication was irretrievable for use as evidence. Also, plaintiffs alleged that defendants used "a generic marketing scheme to promote the product". 418 Mich 336. In its decision in *Abel,*

this Court noted the difficulties posed by the number of defendants and by the length of time between the ingestion of the allegedly defective drug and the appearance of the damages. 94 Mich App 76.

In this case, however, the wheel assembly which gave rise to the injury did not disappear, nor was its source rendered unidentifiable by the defendants' conduct. It remained available for use as evidence and was, in fact, kept separate from the wheel inventory of decedent's employer for quite some time. Plaintiff argues that the similarity of three-piece rims renders them unidentifiable but admits the wheel could be identified if it were available. The interchange of parts between wheel rim manufacturers indicates only that more than one manufacturer may have made the components in question, not that the parts could not be identified. Plaintiff further contends that the identifying stamp on the product was probably obscured by dirt and corrosion, so the decedent could not read it. This is sheer speculation, given the unavailability of the evidence.

As to the vehicle manufacturers, plaintiff's claim of alternative liability is insufficient as well. Trucks are not generic products posing identification difficulties. Plaintiff admits she cannot identify the particular vehicle which was equipped with the subject wheel assembly. In addition, she cannot prove that the wheel was used as original equipment on any of the trucks at decedent's work place. The defendant vehicle manufacturers are not in the business of making three-piece rims. Though a vehicle manufacturer may be held liable for damages caused by defective component parts supplied by another entity, *Comstock v General Motors Corp,* 358 Mich 163; 99 NW2d 627 (1959), this duty has not yet been extended to component

parts added to a vehicle subsequent to distribution. Assuming the existence of a defect, plaintiff must "trace that defect into the hands" of the defendant. *Caldwell v Fox*, 394 Mich 401, 410; 231 NW2d 46 (1975). "[T]he threshold requirement of any products liability action is identification of the injury-causing product and its manufacturer." *Abel*, 418 Mich 324. Failure of a component not supplied by the manufacturer does not give rise to liability on the manufacturer's part. *Antcliff v State Employees Credit Union*, 95 Mich App 224, 231-233; 290 NW2d 420 (1980), *aff'd* 414 Mich 624; 327 NW2d 814 (1982).

## CONCERT OF ACTION

Plaintiff next argues that the trial court erred in granting summary judgment in favor of defendants on plaintiff's concert of action claim. Plaintiff argues that she submitted documentary evidence of the joint efforts and conscious parallelism in the wheel industry and that defendants acted to direct government inquiry away from themselves.

Because the trial court relied on affidavits outside the pleadings in granting summary judgment, we again review the summary judgment as one granted pursuant to GCR 1963, 117.2(3). A motion for summary judgment pursuant to this court rule should not be granted unless it is impossible for the claim asserted to be supported by evidence at trial. *Rizzo v Kretschmer*, 389 Mich 363; 207 NW2d 316 (1973). The data which the trial court considers in ruling on the motion are "affidavits, together with the pleadings, depositions, admissions and documentary evidence then filed in the action or submitted by the parties". GCR 1963, 117.3; *Rizzo, supra*, p 373.

A plaintiff may proceed on the theory of concert of action if he or she can prove "that all defendants acted tortiously pursuant to a common design". *Abel,* 418 Mich 338. "Express agreement is not necessary, and all that is required is that there be a tacit understanding." Prosser, Torts (4th ed), § 46, p 292. "[A] concert of action case does not require that the plaintiff be unable to identify the specific defendant who caused his injury." *Abel,* 418 Mich 338. Rather, each defendant "is jointly and severally liable for the entire amount of damages, although he may be entitled to contribution from his fellow tortfeasors". *Abel,* 94 Mich App 73. "Even if defendant caused no harm himself, he is liable for the harm caused by his fellows because all acted jointly." 94 Mich App 73. "[T]o state a cause of action, a plaintiff need only allege that the defendants were jointly engaged in tortious activity as a result of which the plaintiff was harmed." *Abel,* 418 Mich 338, citing *Walters v Sargent,* 390 Mich 775; 210 NW2d 315 (1973), adopting partial dissent in *Walters v Sargent,* 46 Mich App 379, 384; 208 NW2d 207 (1973).

In this case, the trial court did not give this claim the individual consideration it deserved, but disposed of it on the same basis as the alternative liability claim—failure to identify the source of the wheel. As noted above, the identification problem is not a *sine qua non* of a concert of action claim. Each defendant who acted jointly and tortiously is liable, even though his conduct was not the direct cause of the injury. Thus, in the context of this case, we hold that it does not matter if the party causing the injury in fact is not joined in the concert of action claim, since all those acting in concert, named and unnamed defendants, are

jointly and *severally* liable for the entire harm. *Abel,* 94 Mich App 73.[1]

As discussed below, plaintiff is entitled to recover from defendant wheel manufacturers on a concert of action theory if she can prove that they acted tortiously pursuant to a common design and that such action proximately caused the injury. She can prove tortious activity pursuant to a common design if she establishes that the wheel manufacturers, acting jointly, breached their duty to warn of the danger posed by their products. See *Smith v E R Squibb & Sons, Inc,* 405 Mich 79; 273 NW2d 476 (1979). She can also recover if she can prove that the wheel manufacturers, acting jointly, manufactured and/or marketed an unreasonably dangerous product. See *Owens v Allis-Chalmers Corp,* 414 Mich 413; 326 NW2d 372 (1982); *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977). A showing by plaintiff that there is some evidence supporting these claims would preclude summary judgment. *Rizzo, supra.*

Plaintiff made a sufficient showing that defendant wheel manufacturers acted jointly in failing to warn of a danger in their products to survive their summary judgment motion. Plaintiff submitted an affidavit and other data to show that the wheels and the mismatch of wheel components posed a danger and that the defendants were aware of the numerous incidences of death and injury resulting from wheel explosions. The record does not establish that plaintiff had any warning whatsoever from the wheel manufacturers or that any of these manufacturers were in the practice of

---

[1] Although each defendant tortfeasor who acts in concert is jointly and severally liable, the plaintiff may join others in the suit who also engaged in such conduct, GCR 1963, 206.1, and defendants may seek contribution after judgment. MCL 600.2925a; MSA 27A.2925(1); *Abel,* 94 Mich App 73. The defendant may also implead nonjoined tortfeasors as third party defendants and seek contribution. GCR 1963, 204.

supplying warnings to those affected by the use of their products. Although defendants argue that their products are safe when used properly and that they took adequate measures to warn those working with the wheels, these arguments relating to the reasonableness of their conduct are for the trier of fact. *Smith, supra,* pp 88-90; *Dunn v Lederle Laboratories,* 121 Mich App 73, 79-80; 328 NW2d 576 (1982), *lv den* 417 Mich 1098 (1983). By engaging in the joint OSHA petition campaign, the wheel manufacturers arguably proposed a government role to relieve themselves of their duty to warn those working with the multi-piece rims.[2]

Plaintiff provided documentation showing that the multi-piece rims manufactured and/or marketed by the wheel manufacturers were dangerous and that the manufacturers knew of the danger posed by their products and the mismatch of components of their products. Plaintiff might submit proofs at trial that all three-piece rims posed risks "unreasonable in light of the foreseeable injuries". *Ownes, supra,* p 425. Plaintiff also showed that, rather than change the design of the rims or the rim components, the wheel manufacturers acted jointly in exchanging information and composing charts to show which products were safely interchangeable and which were not. This conduct, as well as the OSHA petition campaign, could indicate a tacit understanding and mutual encouragement to refrain from taking more reasonable steps to prevent the danger posed by the multi-piece wheel rims.

In addition, plaintiff would have to establish that the above alleged tortious activity engaged in

---

[2] Defendants are correct insofar as the OSHA petition campaign cannot be viewed as tortious activity. Nonetheless, the same activity indicates an awareness of the wheel industry as a whole of the gravity of the problem and could be interpreted as a cooperative effort to avoid responsibility for the risks posed by multi-piece rims.

by the wheel manufacturers proximately caused the injury. Although the explosion of the multi-piece rim caused decedent's death in fact, the question of proximate cause is whether or not the conduct of the wheel manufacturers was so significant and important a cause that they should be legally responsible. *Moning, supra,* p 438. Although proximate cause is a question of law where there are no factual disputes, *Moning, supra,* pp 438-439, in a negligence action (which is essentially the underlying tortious activity of plaintiff's concert of action claim), any doubts about the relationship between cause and effect should be resolved by the trier of fact. *Fiser v City of Ann Arbor,* 417 Mich 461, 475; 339 NW2d 413 (1983). Summary judgment can only be granted if reasonable persons could not differ in finding that the wheel manufacturers' conduct was not a proximate cause of the injury. *Fiser, supra,* p 470; *Davis v Thornton,* 384 Mich 138, 142-146; 180 NW2d 11 (1970). Because summary judgment for defendant wheel manufacturers was not granted on this ground, we leave this question for the trial court.

Although plaintiff made a sufficient showing to survive a motion for summary judgment on her concert of action claim against the wheel manufacturers, she did not do so with respect to AMF. There was no indication that defendant AMF acted pursuant to a common design of the other defendants prior to sale of its wheel manufacturing division in 1959. Thus, the trial court was correct as to AMF but erred in granting summary judgment pursuant to GCR 1963, 117.2(3) in favor of the other wheel manufacturers.

Plaintiff's concert of action claim against the vehicle manufacturers is not supported by any showing that they acted jointly with the wheel manufacturers. The purchase of wheels for use as

original equipment on their vehicles is not sufficient for a finding of concert of action. "One who innocently, and carefully, does an act which furthers the tortious purpose of another is not acting in concert with him." *Prosser, supra,* p 292. Thus, the grant of summary judgment for defendant vehicle manufacturers was proper.

## LEAVE TO AMEND

Plaintiff finally argues that the trial court erred by denying plaintiff leave to amend her complaint. In her proposed third amended complaint, plaintiff sought to add allegations of civil conspiracy. Plaintiff also submitted a proposed fourth amended complaint, alleging "enterprise liability".

Leave to amend a complaint "shall be freely given when justice so requires". GCR 1963, 118.1; *Midura v Lincoln Consolidated Schools,* 111 Mich App 558, 562; 314 NW2d 691 (1981). The grant of denial of the motion to amend is within the discretion of the trial court. *McCalla v Ellis,* 129 Mich App 452; 341 NW2d 525 (1983). Furthermore, summary judgment does not preclude amendment of the complaint. *Midura, supra,* p 561. However, failure to grant leave to amend is not reversible error where the pleadings as sought to be amended still fail to state a claim. *Zimmerman v Stahlin,* 374 Mich 93, 96; 130 NW2d 915 (1964); *Crosby v Detroit,* 123 Mich App 213, 223; 333 NW2d 557 (1983).

## CONSPIRACY

"A conspiracy is a combination of two or more persons, by some *concerted action,* to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful

means." *Fenestra, Inc v Gulf American Land Corp,* 377 Mich 565, 593; 141 NW2d 36 (1966) (emphasis added). An allegation of civil conspiracy, standing alone, is not actionable, *Magid v Oak Park Racquet Club Assocs, Ltd,* 84 Mich App 522, 529; 269 NW2d 661, *lv den* 404 Mich 805 (1978).

In this case, plaintiff's proposed third amended complaint contained no allegation that defendants employed unlawful methods to attain a lawful end. The group activities listed by plaintiff were entirely lawful. On the other hand, the unlawful purposes alleged were largely polemic restatements of plaintiff's concert of action allegations. Plaintiff's conspiracy claim boiled down to the allegation that the defendants "conspired to act in concert". This claim lacks meaning without an underlying tortious or criminal activity. "Concert of action" cannot be the tort or unlawful action underlying a conspiracy claim. Concert of action is itself a claim which, like conspiracy, cannot exist independently of an underlying tortious act.

Furthermore, of the specific allegations in the proposed pleadings, only one, defendants' inhibition of product identification, approached the level of intent or agreement requisite to a conspiracy claim. Conspiracy entails "an agreement, or preconceived plan, to do an unlawful act". *Bahr v Miller Bros Creamery,* 365 Mich 415, 427; 112 NW2d 463 (1961). However, plaintiff's allegation of an agreement to inhibit product identification suffers from the absence of an unlawful purpose. Plaintiff does not specify why it is unlawful to inhibit product identification in the absence of a statute requiring clear identifying marks on a product. It is not enough that plaintiff simply asserts a conclusion. *Prelesnik v Esquina,* 132 Mich App 341; 347 NW2d 226 (1984). Thus, the prosposed pleading is legally insufficient on its

face. *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 660; 213 NW2d 134 (1973).

We find that the trial court did not abuse its discretion by refusing plaintiff leave to file her third amended complaint containing the conspiracy claim.

### Enterprise Liability

Also, the trial court correctly denied leave to file the proposed fourth amended complaint, since enterprise liability is not recognized in Michigan. *Abel,* 418 Mich 336-337. The amended complaint still would have failed to state a claim. *Zimmerman, supra.*

This case is reversed and remanded for trial of plaintiff's concert of action claim against the wheel manufacturers, except defendant AMF. In all other respects, the judgment is affirmed.

Affirmed in part, reversed in part and remanded.