# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF LEAH CARPENTER, by
STEPHANIE REESE, Personal Representative,

        Plaintiff-Appellant,

and

DEPARTMENT OF COMMUNITY HEALTH

        Intervening Plaintiff,

v

WEINER & ASSOCIATES, PLLC, RONALD M.
APPLEBAUM, ERIK J STONE, NICHOLAS M.
MARCHENIA, GREAT LAKES
AMBULATORY SURGICAL CENTER, LLC,
doing business as ENDOSURGICAL CENTER
AT GREAT LAKES, GREATER LAKES
ANESTHESIA, PLLC, ENTERPRISE LEASING
COMPANY OF DETROIT, LLC, CYRIL V.
WEINER, WILLIAM J. FOCAZIO, M.D., and
MICHAEL ANGELO,

        Defendants-Appellees,

and

PAUL PETRE, M.D., PAUL PETRE, M.D., PC,
HOME CLINIC GROUP, PC, HOME CLINIC,
PC, REESE J. JAMES, D.O., KELLAM &
ASSOCIATES, PC, AMERICAN PAIN
DOCTORS, PLC, 1800 USLAWYER, EDWARD
M. FIROSZ, PACIFIC MARKETING, INC., and
ELITE SURGICAL MEDICAL CONSULTANTS,
LLC,

        Defendants.

UNPUBLISHED
October 31, 2017

No.  332142
Macomb Circuit Court
LC No.  2013-003215-NO

-1-

Before: BORRELLO, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff, the Estate of Leah Carpenter, appeals by right a March 7, 2016, trial court order granting summary disposition in favor of defendants-appellees pursuant to MCR 2.116(C)(10), dismissing plaintiff's claims for legal malpractice against defendants Weiner & Associates, PLLC, Cyril V. Weiner, Ronald M. Applebaum, Erik J. Stone, and Nicholas M. Marchenia (Weiner Defendants), and for civil conspiracy against all defendants-appellees. For the reasons set forth in this opinion, we affirm.

## I. FACTS AND PROCEEDINGS

### A. PLAINTIFF'S CONSPIRACY THEORY

Plaintiff's conspiracy claim is based on her theory that defendants (except Enterprise) formed a conspiracy to enrich themselves at the expense of no-fault automobile insurance carriers. The alleged conspiracy involved three groups of actors, with defendants Michael Angelo and William Focazio, M.D., associated with two of these groups. The first group consists of the individuals Angelo and Dr. Focazio, and the entities 1-800-US-LAWYER and Pacific Marketing, Inc. Angelo and Dr. Focazio owned Pacific Marketing, which operated the 1-800-US-LAWYER toll free number for purposes of marketing legal services.

The second group consisted of the law firm, Weiner & Associates (the "Weiner firm"), its principal, Cyril V. Weiner, its associate attorneys, Ronald M. Applebaum and Erik J. Stone, and Nicholas M. Marchenia, a paralegal who later joined the firm as an associate attorney (collectively referred to as the "Weiner defendants").

The third group consists of Great Lakes Ambulatory Surgical Center, LLC, doing business as Endosurgical Center at Great Lakes, and Greater Lakes Anesthesia, LLC (collectively referred to as the "Great Lakes defendants"). Great Lakes Ambulatory Surgical Center operated the outpatient surgical facility, Endosurgical Center. Angelo and Dr. Focazio were joint owners of the Great Lakes defendants.

Plaintiff alleged that the conspiracy worked as follows: Angelo advertised the 1-800-US-LAWYER toll free number as a marketing service for personal injury attorneys. The Weiner firm was one of the Detroit-area practices to contract with this service. Weiner posted the 1-800-US-LAWYER number on television commercials and advertisements in other media. The Weiner firm paid a referral fee to 1-800-US-LAWYER for each client who retained the Weiner firm after contacting the Weiner firm through 1-800-US-LAWYER. The Weiner firm contracted with the client on a contingency fee basis. The Weiner firm then referred clients to the Endosurgical Center or a physician who performed procedures at the Endosurgical Center. According to plaintiff, the physician provided the client with unnecessary medical procedures, which were billed to the client's no-fault insurance carrier. Plaintiff alleged that the Weiner firm collected one-third of the no-fault benefit payment pursuant to the contingency agreement. The remaining two-thirds of the benefit payment was distributed among the Great Lakes defendants and the treating physician. The Weiner defendants thus enriched themselves, and also enabled

Angelo and Dr. Focazio to enrich themselves through their dual roles as marketers and medical providers. Plaintiff alleged that the decedent was rendered a quadriplegic, and died five months later, as a result of unnecessary medical procedures provided through this alleged conspiracy. Dr. Reese James, an orthopedic physician, performed the procedure that led to decedent's injury and death. The allegedly unnecessary procedure was performed at the Endosurgical Center.

## B. THE DECEDENT'S INJURY AND PLAINTIFF'S LAWSUIT

The decedent was driving an Enterprise rental vehicle that was struck from behind by another vehicle. The decedent did not immediately seek medical attention. Less than two weeks later, the decedent executed a contingency fee agreement with the Weiner firm after consultation with its independent contractor, Lionel Walker. Walker referred the decedent to Dr. Paul Petre, who referred her for MRI and nerve testing. Although these tests did not reveal any objective injury, Dr. Petre continued to treat the decedent and refer her for physical therapy. The Weiner firm referred the decedent to Endosurgical Center or Dr. James, who recommended that the decedent undergo "digital fluoroscopically guided cervical epidurogram and cervical epidural steroid injections" under anesthesia for treatment of pain. The decedent received injections in February and March 2010, which supposedly relieved her symptoms.

Enterprise, which acted as its own no-fault insurance carrier, referred the decedent to Dr. Philip J. Mayer, an orthopedic specialist, for an independent medical examination (IME). Dr. Mayer determined that the decedent had no objective injury corresponding to her reports of pain. He determined that the injections under anesthesia were not medically indicated and not warranted under evidence-based guidelines. He concluded that "[i]t has not been documented that there is any objective pathology that has ever been identified, related to the accident that would justify the ongoing treatments."

The decedent received a third injection under anesthesia on April 3, 2010. She showed signs of injury upon awaking from the anesthesia. Over the following weeks and months, the decedent's condition deteriorated. By August 2010, she was rendered completely quadriplegic and ventilator-dependent. She died on September 20, 2010. The Wayne County Medical Examiner determined that the decedent "died of pneumonia and pyelonephritis due to quadriplegia and complications thereof due to remote steroid injection into the cervical spinal cord." The manner of death was accident.

Plaintiff brought a separate wrongful death medical malpractice action against Dr. James and Kellam & Associates. Plaintiff brought this action for civil conspiracy and concert of action against the Weiner defendants, the Great Lakes defendants, Angelo, and Dr. Focazio. She also filed a separate wrongful death medical malpractice action against Dr. James and his practice, Kellam & Associates, and also named him as a defendant in the instant lawsuit. The actions were consolidated for purposes of discovery only. Plaintiff resolved her claims against Dr. James and his practice through a voluntary settlement.

The Weiner defendants, the Great Lakes defendants, Angelo, and Dr. Focazio moved for summary disposition in the instant action. They argued that there was no genuine issue of material fact that they combined to engage in an unlawful scheme, or that their alleged conduct

was a proximate cause of the decedent's injury. They also asserted that the wrongful-conduct rule and the doctrine of intervening negligence precluded recovery.

The trial court granted the motions for summary disposition. In its opinion and order, the trial court noted that the decedent's injuries and death resulted from the epidural steroid injection administered by Dr. James, but which Dr. Mayer determined was not indicated. The trial court found that plaintiff failed to cite evidence supporting a genuine issue of material fact that 1-800-US-LAWYER referred the decedent to the Weiner defendants. The decedent contacted the Weiner defendants before they formed a relationship with 1-800-US-LAWYER. Weiner's intake form indicated that "Leslie" referred the decedent to them, but plaintiff proffered no evidence linking Leslie to either defendants Weiner or 1-800-US-LAWYER.

The trial court concluded that plaintiff's claims based on conspiracy and concert of action failed because plaintiff did not proffer evidence that defendants engaged in any unlawful scheme. There was no evidence that Lamont Walker, an independent contractor who initially solicited the decedent as a client for the Weiner firm, obtained information about the accident from anyone other than plaintiff. There was no evidence that Weiner and/or 1-800-US-LAWYER acquired the police report and provided it to plaintiff. Plaintiff did not demonstrate that Walker's actions constituted the unlawful practice of law. Walker's conduct in referring plaintiff to medical providers was not a tortious act. "[T]he referrals were limited to examinations and evaluations." Plaintiff did not prove that Weiner made the referrals with an "expectation that the referrals would lead to unnecessary medical treatments." If the decedent received unnecessary treatment, this did not prove that defendants had an agreement regarding the churning of legal and medical expenses. The trial court concluded that "the record does not contain sufficient evidence from which the jury could reasonably conclude the moving defendants had a common scheme to churn legal and medical expenses for profit."

The trial court entered a written order granting summary disposition and dismissing plaintiff's claims on March 7, 2016. This appeal ensued.

## II. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Id*. A genuine issue of material fact exists when the record leaves open "an issue upon which reasonable minds might differ." *Debano–Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (quotation omitted).

## III. ANALYSIS

### A. CONSPIRACY AND CONCERT OF ACTION

Plaintiff alleged that the various defendants engaged in a conspiracy and concert of action that was the proximate cause of the decedent's injury.

"This Court has defined civil conspiracy as a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Urbain v Beierling*, 301 Mich App 114, 131; 835 NW2d 455 (2013) (quotation marks and citation omitted). "In addition, to establish a concert-of-action claim, a plaintiff must prove that all defendants acted tortiously pursuant to a common design that caused harm to the plaintiff." *Id*. at 132 (quotation marks and citation omitted). "For both civil conspiracy and concert of action, the plaintiff must establish some underlying tortious conduct." *Id*. Civil conspiracy and concert of action are not actionable torts, "but rather require a separate tort before liability can attach." *Id*. "Conspiracy entails an agreement, or preconceived plan, to do an unlawful act." *Cousineau v Ford Motor Co*, 140 Mich App 19, 37; 363 NW2d 721 (1985).

In order to prove a claim of concert of action, a plaintiff must show that "all defendants acted tortiously pursuant to a common design." *Abel v Eli Lilly & Co*, 418 Mich 311, 338; 343 NW2d 164 (1984). If the plaintiff satisfies these elements, a legal fiction is created whereby each defendant is deemed to be the cause in fact of the plaintiff's injury even though only one person may have actually caused the injury. *Holliday v McKeiver*, 156 Mich App 214, 217-218; 401 NW2d 278 (1986). The plaintiff need not establish that the defendants had an express agreement to act in concert; rather, the showing of a tacit agreement is sufficient. *Cousineau*, 140 Mich App at 32.

The trial court determined that the Great Lake defendants and the Weiner defendants were entitled to summary disposition because plaintiff failed to establish a genuine issue of material fact that they engaged in concerted action for an illegal purpose. The trial court stated that the Weiner defendants merely referred the decedent to a physician because she complained of pain and discomfort. The trial court found that there was no evidence that the Weiner defendants made the referrals with an expectation that they would result in any unnecessary medical treatments.

Plaintiff does not explicitly identify the alleged unlawful purpose of defendants' actions, but indirectly argues that defendants conspired to commit insurance fraud under MCL 500.4503. Plaintiff argues that defendants "orchestrated" decedent's medical care by providing her with unnecessary treatment and submitting claims to the insurer for payment of these unnecessary treatments. Plaintiff contends that under this "scheme" the Weiner firm would receive its one-third share of these benefits pursuant to its contingency agreement, and the Great Lakes defendants, Angelo, and Dr. Focazio would receive the remaining two-thirds share. However, there is no direct or circumstantial evidence to create a question of fact regarding whether defendants acted in combination to manipulate or persuade decedent to accept evaluation and recommendations for treatment with knowledge that at least some recommendations were not medically indicated. Rather, the decedent was referred for medical treatment; there is no admissible evidence that defendants were aware what medical care would be recommended and defendants had no part in determining what care was medically necessary. After the referral was made, it was the responsibilities of the treating physician to act in accordance with the applicable standard of care and provide only medically-necessary treatment. To the extent that medical providers did not adhere to the applicable standard of care and provided unnecessary treatment, there is no admissible evidence that defendants were responsible for advising decedent to accept

the treatment; instead, plaintiff's claim sounded in medical malpractice against the medical providers.

Plaintiff offers Dr. Mayer's IME report in support of her claim that the treatments were unnecessary. Additionally, decedent's 2009 MRI testing and nerve testing did not reveal any abnormalities. Although Dr. Mayer's opinion establishes a question of fact as to whether decedent's treatments were medically indicated, it does not establish a question of fact as to whether defendants were engaged in a conspiracy to induce decedent to accept unnecessary treatments. Dr. Mayer found that there was no objective evidence of injuries causing the decedent's pain. However, Dr. James administered treatments based on the decedent's subjective complaints of pain. This evidence does not support an inference of a conspiracy to present false claims for insurance benefits. For the conspiracy to operate, the Weiner defendants would have to refer clients to the Great Lakes defendants with the expectation that the Great Lakes defendants would recommend treatment even if no treatment was indicated. Providers associated with Great Lakes would have to render treatment that fell below the applicable standard of care and falsely represent to the client that treatment was required, or persuade the client to go along with the false insurance claim. Plaintiff has not offered any admissible evidence that defendants induced decedent to accept unnecessary treatment.

Viewed in a light most favorable to plaintiff, the evidence does not support an inference of conspiracy. Even assuming an inference can be drawn that the Weiner defendants, the Great Lakes defendants, and Angelo's marketing entities enjoyed a mutually beneficial arrangement in which the Weiner defendants benefitted from Angelo's marketing activities, and reciprocated by referring clients to the Great Lakes defendants for medical evaluation, this would not create a question of fact that defendants engaged in tortious behavior that was a proximate cause of the decedent's injuries. Rather, the evidence established that the Weiner defendants referred the decedent to a medical provider who recommended treatment for the decedent's subjective complaints, although these complaints could not be corroborated by objective findings. Without admissible evidence that the decedent was misled or manipulated into accepting unnecessary treatment there is no evidence of a conspiracy to bilk no-fault insurers of unjustified benefit payments. There also is no admissible evidence that the decedent's complaints of pain were fabricated for purposes of the conspiracy. On the contrary, the decedent's complaints are documented not only in her legal file, but also in her Hematology Clinic records. Accordingly, the trial court did not err in granting summary disposition in favor of defendants with respect to plaintiff's conspiracy claim.

In addition, there was no evidence to create a genuine issue of material fact as to whether the alleged conspiracy was the proximate cause of decedent's injuries. There is no admissible evidence that decedent accepted treatment as a result of the alleged conspiracy. The Weiner defendants' role in the decedent's health care was limited to recommending that decedent consult the physicians associated with Great Lakes. Plaintiff has not presented admissible evidence to support her claim that defendants misinformed decedent about the benefits and risks of the treatment, or otherwise induced her to accept treatment not in her best interests, in order to advance the goals of the alleged conspiracy. Accordingly, there was no question of fact regarding causation. See *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 496; 791 NW2d 853 (2010) ("In order to be a proximate cause, the negligent conduct must have been a cause of the

-6-

plaintiff's injury and the plaintiff's injury must have been a natural and probable result of the negligent conduct.").

In sum, the trial court did not err in granting summary disposition in favor of defendants with respect to illegal conduct and proximate cause. Accordingly, we need not address defendants' arguments concerning intervening cause and allocation of fault on the part of decedent.

## B. LEGAL MALPRACTICE

Plaintiff also argues that the trial court erred in granting summary disposition for the Weiner defendants on her claim for legal malpractice.

A plaintiff claiming legal malpractice must establish these elements: "(1) the existence of an attorney-client relationship, (2) negligence in the legal representation of the plaintiff, (3) that the negligence was the proximate cause of an injury, and (4) the fact and the extent of the injury alleged." *Kloian v Schwartz*, 272 Mich App 232, 240; 725 NW2d 671 (2006).

Plaintiff alleges that the Weiner defendants were negligent based on their violation of ethical rules and for failing to obtain the decedent's medical records and IME. Plaintiff's legal expert identified violations of MRPC 1.7 (conflict of interest), MRPC 5.5 (practicing law without a license), and MRPC 7.2 (improper advertising). However, MRPC 1.0(b) provides that violations of the Michigan Rules of Professional Conduct "do not . . . give rise to a cause of action for enforcement of a rule or for damages caused by failure to comply with an obligation or prohibition imposed by a rule." Accordingly, plaintiff's claim of malpractice is not valid to the extent that it relies on violations of the MRPC.

Plaintiff also argues that the Weiner defendants' failure to obtain decedent's medical records, including her IME report, constituted malpractice. The implied basis of this argument is that the Weiner defendants had a duty to verify that decedent was not receiving inappropriate and unwarranted medical treatment. However, the Weiner defendants were not medical experts or practitioners; thus, they were not qualified to review the decedent's treating providers' recommendations. If the Weiner defendants had obtained and reviewed the decedent's medical records, they would have learned that Dr. Mayer found that decedent did not present objective proof of injury. However, admissible evidence clearly demonstrates that decedent subjectively experienced pain. Given that there was conflicting evidence in this case relative to plaintiff's medical condition, we cannot find a legal basis on which this Court may assume that the Weiner defendants were qualified to sort out decedent's medical needs or evaluate conflicting medical information. Indeed, had the Weiner defendants done so, it may have constituted the unauthorized practice of medicine. The Weiner defendants also correctly assert that Michigan has not recognized a cause of action for negligent professional referral by an attorney. Accordingly, the trial court did not err in granting summary disposition for the Weiner defendants with respect to plaintiff's claim for legal malpractice.

Affirmed. No costs awarded. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ William B. Murphy
/s/ Amy Ronayne Krause