Ronnie K. BAUGHMAN, Appellant,

v.

GENERAL MOTORS
CORPORATION, Appellee.

No. 85–1579.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 7, 1985.

Decided Jan. 7, 1986.

Frederick A. Gertz, Columbia, S.C.
(George A. Kastanes, Cheryl A. Forest,
Gertz, Kastanes & Moore, Columbia, S.C.,
on brief) for appellant.

Stephen G. Morrison, Columbia, S.C.
(Richard H. Willis, Nelson, Mullins, Grier &
Scarborough, Columbia, S.C., on brief) for
appellee.

Before CHAPMAN and SNEEDEN, Cir-
cuit Judges and HILTON, United States
District Judge for the Eastern District of
Virginia, sitting by designation.

CHAPMAN, Circuit Judge:

This is an appeal from summary judg-
ment entered for the defendant General
Motors (GM), in a diversity action brought
under S.C.Code Ann. § 15–73–10 et seq.
This statute is Section 402A of the Second
Restatement of the Law of Torts, which
the General Assembly of South Carolina
has enacted. The plaintiff, Ronnie Baugh-
man, sought to recover for injuries re-
ceived when a multi-piece wheel from a
1979 GMC truck separated with explosive
force. GM was granted summary judg-
ment on the grounds that it did not design,
manufacture, or place into the stream of
commerce the wheel in question. From
this decision Baughman appeals. We af-
firm.

## I

Baughman was a tire mechanic; he was employed by Newton Truck Rentals, Inc. at the time of his accident. On May 25, 1981, Baughman was changing a tire on a 1979 GMC truck. The tire was mounted on a CR–2 multi-piece wheel. Baughman removed the left outside rear wheel from the truck and disassembled the tire, tube, rim base and side ring. He then replaced the tire and tube and reassembled the rim base and side ring. Baughman put the wheel in a safety cage in case it separated during inflation. Once the tire was inflated, Baughman removed it from the cage and rolled it over to the truck. Baughman began to remount the wheel and it exploded, severely injuring him.

At the time of the accident, Baughman had over two and one-half years of continuous experience in servicing all types of multi-piece wheels. By his own estimate, he had changed over 10,000 tires before his accident. Baughman had read literature on safety procedures for mounting various types of multi-piece wheel assemblies and twice before he had seen multi-piece wheels explode.

GM only puts CR–3 wheels on its trucks, and there is no question that the CR–2 wheel which injured Baughman was not marketed by GM. The CR–3 is also a multi-piece wheel. The CR–3 and the CR–2 share the same rim base, but the CR–2 has a one-piece side ring and the CR–3 has a two-piece side ring. Baughman's expert testified that the locking mechanism which holds the wheels together is identical on the CR–2 and the CR–3, but he went on to testify that the CR–3 is less likely to explode because of its two-piece side ring design.

Baughman presented two theories of liability. First, in designing the GMC truck in question, GM selected a CR type wheel, and Baughman argues that all CR type wheels are unreasonably dangerous. Even though the wheel which caused his injury is not the wheel which GM put on the truck, Baughman would base liability on the fact that it is a similar type of wheel. Second, Baughman also argues that GM failed to warn him that the wheel could explode after the tire was fully inflated.

GM moved for summary judgment. The district court granted the motion, holding that GM could not be liable for an allegedly defective wheel which it did not design, manufacture, or place into the stream of commerce. The district court also held that GM had no duty to warn of possible dangers posed by replacement parts that it did not design, manufacture, or place into the stream of commerce. The court went on to note that even if GM had such a duty, its failure to warn could not have been the proximate cause of Baughman's injuries since Baughman was already well aware of the dangers inherent in multi-piece truck wheels. Baughman appeals from this decision.

## II

██ As GM neither designed nor manufactured the CR–2 rim, if GM is to be held liable then it must be upon the theory of assembler's liability. A manufacturer or assembler who incorporates a defective component part into its finished product and places the finished product into the stream of commerce is liable for injuries caused by a defect in the component part. The fact that the manufacturer or assembler did not actually manufacture the component part is irrelevant, as it has a duty to test and inspect the component before incorporating it into its product. *Nelson v. Coleman Company,* 249 S.C. 652, 155 S.E.2d 917 (1967). As a necessary corollary, the plaintiff must be able to show that the defendant sold or exercised control over the defective product. *See Ryan v. Eli Lilly & Company,* 514 F.Supp. 1004, 1006–07 (D.S.C.1981).

██ Where, as here, the defendant manufacturer did not incorporate the defective

component part into its finished product and did not place the defective component into the stream of commerce, the rationale for imposing liability is no longer present. The manufacturer has not had an opportunity to test, evaluate, and inspect the component; it has derived no benefit from its sale; and it has not represented to the public that the component part is its own.

Baughman asserts that the GMC truck is defective because it incorporates the CR type wheel. His position is that GM selected a CR type wheel for its truck, and should not escape liability for injuries caused by a CR type wheel simply because it is not the same wheel which GM put on the truck. This argument must fail for the reasons stated above. GM never had the opportunity to test or evaluate CR–2 wheels such as the one which injured Baughman, therefore GM is not liable for his injuries.

 Baughman also argues that the GMC truck was defective because GM failed to adequately warn of the dangers associated with multi-piece wheel rims. Since the exploding rim in question was a replacement component part and not original equipment, Baughman's position would require a manufacturer to test all possible replacement parts made by any manufacturer to determine their safety and to warn against the use of certain replacement parts. If the law were to impose such a duty, the burden upon a manufacturer would be excessive. While a manufacturer can be fairly charged with testing and warning of dangers associated with compo-

nents it decides to incorporate into its own product, it cannot be charged with testing and warning against any of a myriad of replacement parts supplied by any number of manufacturers. The duty to warn must properly fall upon the manufacturer of the replacement component part. *See Spencer v. Ford Motor Company,* 141 Mich.App. 356, 367 N.W.2d 393 (1985). Since GM may not properly be charged under the law with a duty to warn against replacement component parts, plaintiff's failure to warn theory of liability cannot prevail.

Summary judgment is appropriate where the material facts are not in dispute and a party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. In the instant case there is no dispute as to the material facts and GM is entitled to judgment. The district court was correct in holding that GM cannot be liable for injuries caused by a wheel rim assembly which it did not design, manufacture, or place into the stream of commerce.

AFFIRMED.