EXXON SHIPPING COMPANY and Exxon Company, U.S.A. (A Division of Exxon Corporation), Plaintiffs,

v.

PACIFIC RESOURCES, INC., Hawaiian Independent Refinery, Inc., PRI Marine, Inc., PRI International, INC., and Sofec, Inc., Defendants.

PACIFIC RESOURCES, INC., Hawaiian Independent Refinery, Inc., PRI Marine, Inc., and PRI International, Inc., Third–Party Plaintiffs,

v.

BRIDON FIBRES AND PLASTICS, LTD., Griffin Woodhouse, Ltd., and Werth Engineering, Inc., Third–Party Defendants.

Civ. No. 90–00271 HMF.

United States District Court, D. Hawaii.

Dec. 3, 1991.

Leonard Alcantara, Robert Frame, Joy Lee Cauble, Alcantara & Frame, Honolulu, Hawaii, Robert H. Wood, Jr., Exxon Co., U.S.A., New Orleans, La., for Exxon Shipping Co. and Exxon Co.

George W. Playdon, Jr., Patricia K. Wall, Reinwald, O'Connor, Marrack, Hoskins & Playdon, Honolulu, Hawaii, Theodore G. Dimitry, Henry S. Morgan, Vinson & Elkins, Houston, Tex., for Pacific Resources, Inc., Hawaiian Independent Refinery, Inc., PRI Marine, Inc. and PRI Intern., Inc.

Michael D. Tom, Randall K. Schmitt, Brad S. Petrus, McCorriston, Miho & Miller, Honolulu, Hawaii, for Sofec, Inc.

John R. Lacy, Goodsill, Anderson, Quinn & Stifel, Honolulu, Hawaii, for Griffin Woodhouse, Ltd.

David W. Proudfoot, Nenad Krek, Case & Lynch, Honolulu, Hawaii, for Bridon Fibres and Plastics, Ltd.

Franklin I. Remer, Hurwitz, Remer, DiVincenzo & Griffith, Corona Del Mar, Cal., for Werth Engineering & Marine, Inc.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

FONG, District Judge.

INTRODUCTION

On November 25, 1991, the court held a hearing on defendant Sofec's motion for partial summary judgment as to any potential liability caused by an allegedly defective chafe chain. Defendant's motion was filed on October 10, 1991. Defendants and third-party plaintiffs Pacific Resources, Inc., Hawaiian Independent Refinery, Inc., PRI Marine, Inc., and PRI International, Inc. (collectively "HIRI"), filed a memorandum in opposition to the motion on November 1, 1991. Plaintiff Exxon Shipping Company and Exxon Company, U.S.A. (collectively "Exxon"), also filed a memorandum in opposition to the motion on November 7, 1991. Defendant and third-party plaintiff Griffin Woodhouse, Ltd. ("Griffin"), filed a memorandum in opposition to the motion on November 5, 1991.

Defendant and third-party plaintiff Bridon Fibres and Plastics, Ltd. ("Bridon"), filed a cross-motion for partial summary judgment filed on November 7, 1991. Plaintiff Exxon's memorandum in opposition to the cross-motion was filed on November 15, 1991. On November 15, 1991, defendant Sofec filed a reply memorandum and response to defendant Bridon's cross-motion. On November 19, 1991, Bridon filed a reply memorandum.

BACKGROUND

I. *Relevant Facts*

This case arises out of the March 2, 1989 breakaway of the EXXON HOUSTON, which was owned and operated by Exxon, from its mooring at Barber's Point and subsequent grounding approximately three hours later. The facility to which the EXXON HOUSTON was moored at the time of the breakaway was owned and operated by HIRI. The HIRI mooring facility is commonly referred to as a Single Point Mooring or SPM terminal.

After the breakaway, the Type "C" chafe chain, which was used to connect the SPM to the EXXON HOUSTON, was recovered. A link of the chain was found to have fractured. Post-accident, destructive testing of the chain has indicated that the welds of the chain links *may* have been defective.

In 1986, HIRI contracted Sofec to design, construct, and assemble the SPM facility in conformance with a prescribed set of specifications. The contract between HIRI and Sofec called for Sofec to purchase and deliver all consumable and nonconsumable material as required for the SPM. However, the contract specifically stated that Sofec's warranty did not include any parts which HIRI purchased directly from HIRI's suppliers.

Pursuant to the original contract between HIRI and Sofec, Sofec was required to provide HIRI with two Type "C" chafe chains. HIRI later issued a change order eliminating the second Type "C" chafe chain from Sofec's scope of work. Consequently, Sofec supplied only one Type "C" chafe chain which Sofec purchased from Bridon ("Sofec chain"). HIRI independently purchased a second Type "C" chafe chain, apparently as an eventual replacement for the Sofec chain, also purchased

from Bridon ("HIRI chain"). Both chafe chains were designed and manufactured by Griffin.

Viewing the facts in the light most favorable to the nonmoving parties, both the HIRI and the Sofec chafe chains arrived at HIRI's storage facility. When the SPM was installed in January of 1987, one of the two chains was utilized whereas the other chain remained in storage. In April of 1987, the utilized chain was replaced with the chain which had been in storage. Although initial evidence indicated that the HIRI chain had fractured, it now appears that there is no evidence as to the identity of the allegedly defective chain. Deposition testimony provided by several key HIRI employees indicates that neither Exxon nor HIRI will ever be able to identify which of the two chains was in use on the day of the breakaway.

## II. *Procedural History*

Plaintiff Exxon filed a complaint against defendants HIRI and defendant Sofec on April 18, 1990, alleging that "the chafing chain, which was part of HIRI's mooring equipment on its SPM buoy, parted, causing EXXON HOUSTON to breakaway from its berth." Plaintiff's Complaint at para. 13. Plaintiff Exxon further alleges that Sofec negligently designed, manufactured, selected materials, assembled, inspected, tested, distributed, sold, or otherwise supplied a SPM buoy to HIRI which was defective. Plaintiff's Complaint at paras. 60–69.

On June 4, 1990, HIRI filed its first amended third-party complaint against Griffin, Bridon, and Werth Engineering and Marine, Inc. ("Werth"). The complaint alleges that the chafe chain manufactured and/or sold by these third-party defendants was defective and the proximate cause of its losses. HIRI's complaint sets forth six causes of action: strict product liability; breach of contract; breach of implied and express warranties; negligence; failure to warn; and, contribution and indemnity.

On January 15, 1991, HIRI also filed a cross-claim against Sofec, alleging that Exxon's and HIRI's damages were caused "by defects in the chafing chain ... distributed by Bridon and Sofec," and sets forth the same six causes of action alleged against Griffin, Bridon and Werth. On May 23, 1991, a Stipulation and Order was entered dismissing all claims against Werth without prejudice.[1] Griffin, the alleged manufacturer of the chafe chain, and Bridon, the distributor of the same, have also filed cross-claims against Sofec alleging a right to indemnity and contribution for any liability they might incur to plaintiff Exxon.

On December 14, 1990, Sofec filed a motion for summary judgment on the grounds that (1) it did not design, manufacture, distribute and/or sell the failed safe chain and (2) it designed and manufactured the SPM in complete compliance with specifications provided by HIRI. The non-moving parties argued in opposition to the motion that it was premature to grant summary judgment in favor of Sofec as to potential liability arising out of the allegedly defective chafe chain because additional time was necessary to conduct discover which chain had been used at the time of the breakaway. The court denied Sofec's motion without prejudice on February 11, 1991.

## III. *Filings On Instant Motion*

In the instant motion for partial summary judgment, Sofec claims that there is no evidence to support a finding that Sofec designed, manufactured, distributed, sold or otherwise supplied the specific chafe chain which failed. Sofec argues that the litigants have had ample time (18 months since the original complaint was filed) in which to discover evidence as to the identity of the failed chain. Absent such evidence, Sofec concludes that it is entitled to summary judgment in its favor as to "all theories of liability premised on the contention that Sofec designed, or manufactured or otherwise supplied a defective [chafe

---

1. Werth, who was Bridon's U.S. sales agent, will not be discussed separately in this decision. Instead, Bridon will be referenced as the direct seller of both the Sofec and the HIRI chain.

chain]." Defendant Sofec's Memorandum in Support of Motion for Partial Summary Judgment at p. 5. Sofec has not moved for summary judgment on the claims against Sofec arising from its potential liability as the designer and manufacturer of the SPM.

Bridon has filed a cross-motion for summary judgment based upon Sofec's motion. Bridon argues that insofar as Sofec is not liable as a commercial supplier of an allegedly defective product, Sofec cannot maintain its claim against Bridon for contribution or indemnity arising from such liability.

In its opposition papers, HIRI argues that Sofec should be held strictly liable even though it may not have supplied the allegedly defective chain. HIRI requests the court to grant additional time for discovery in order to determine the identity of the chain that fractured. Griffin, in its memorandum in opposition, also pleads for additional time in which to conduct discovery. Exxon, in its opposition papers, appears to concede that additional discovery would not resolve the identity of the fractured chain. Instead, Exxon argues that Sofec breached its implied duty to inspect and test the Sofec chain, which would have revealed that the chain incorporated into the SPM, whatever the origin, was of a design unsuitable for its intended use. Exxon further argues that Sofec, as the designer of the SPM comprising a defective component, should be held strictly liable given that the replacement part was identical to the original component. For these same reasons, Exxon contends that Bridon's cross-motion also should be denied.

Presuming that Sofec prevails on its motion, Sofec does not contest Bridon's cross-motion insofar as its seeks dismissal of Sofec's claim against Bridon for indemnity and contribution that arises from the contract for the sale of goods. Sofec, however, reasserts its claims for common law contribution arising out of Bridon's alleged negligence and strict liability. In its reply memorandum, Bridon appears to accept Sofec's position on Bridon's cross-motion.

## DISCUSSION

### I. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987), *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the non-moving party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *But cf., id.,* 477 U.S. at 328, 106 S.Ct. at 2555–56 (White, J., concurring).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on his pleadings, nor can he simply assert that he will be able to discredit the movant's evidence at trial. *See T.W. Elec.,* 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the fac-

tual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Building Products, Inc. v. Franciscan Ceramics,* 818 F.2d 1466 at 1468, (9th Cir.1987), *citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987), *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec.,* 809 F.2d at 631. Also, inferences from the facts must be drawn in the light most favorable to the non-moving party. *Id.* Inferences may be drawn both from underlying facts that are not in dispute, as well as from disputed facts which the judge is required to resolve in favor of the non-moving party. *Id.*[2]

## II. *Contractual Liability*

■ HIRI's contract claims against Sofec arising out of the allegedly defective chafe chain are two-fold (1) breach of contract and (2) breach of implied and express warranties.[3] However, HIRI cannot maintain a claim sounding in contract against Sofec for the sale of an allegedly defective

chain unless HIRI can establish that Sofec, in fact, sold the chain at issue.

HIRI has not come forward with any evidence that could identify Sofec as the supplier of the fractured chafe chain. Within days of the breakaway of the EXXON HOUSTON, HIRI initially concluded that the HIRI chain, which was purchased directly from Bridon, had broken. However, on February 11, 1991, during the hearing on Sofec's original motion for summary judgment, the non-moving parties represented to the court that additional time was necessary to discover whether the fractured chain had been sold or otherwise distributed by Sofec.

Since that time, a series of depositions of HIRI employees have been taken in which the deponents testified that HIRI could not reasonably determine the identity of the failed chain. Prior to the breakaway of the EXXON HOUSTON, HIRI did not have an inventory control program by which HIRI identified the source of the chafe chains in its inventory. Sofec's Motion for Partial Summary Judgment, Exhibit I (excerpts of deposition transcript of James Pililaau, Jr., HIRI's maintenance foreman responsible for the chains). In fact, Mr. Pililaau testified that he could not think of any way by which to identify the chafe chain that was on the SPM buoy at the time of the breakaway. Mr. Pililaau further testified that, as the HIRI employee best able to identify the chain, no other HIRI employee would know the source of the failed chafe chain.

On September 9, 1991, Bridon noticed the deposition of the officer(s), director(s), agent(s) or employee(s) of HIRI having knowledge or information concerning the identify of the failed chain and/or HIRI's inventory practices and procedures. In response, Raymond Garza, HIRI's Purchasing Manager since 1986, and Aldredge Kane, HIRI's Maintenance Manager since

---

**2.** For the purposes of deciding this motion, the court applies substantive admiralty law. With respect to the adoption and application of products liability law in admiralty cases, the Supreme Court and the Ninth Circuit have borrowed substantially from principles developed in "land-based" jurisprudence. *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 865–75, 106 S.Ct. 2295, 2299–2304,

90 L.Ed.2d 865 (1986); *Pan–Alaska Fisheries, Inc. v. Marine Construction & Design Co.,* 565 F.2d 1129, 1133 (9th Cir.1977).

**3.** Exxon does not oppose Sofec's motion for partial summary judgment on the contract claims linked to the allegedly defective chafe chain.

1978, separately appeared. Mr. Garza testified that he was unable to identify the source of the fractured chain. Mr. Garza corroborated Mr. Pililaau's testimony that HIRI had no practice or procedure by which the chafe chains in storage could be differentiated. Sofec's Motion for Partial Summary Judgment, Exhibit K (excerpts of Garza deposition). Mr. Kane, who was at all relevant times Mr. Pililaau's supervisor, also testified that he could not identify the source of the failed chafe chain. Supplemental Affidavit of Brad S. Petrus, Exhibit A. Accordingly, because the sale of the failed chafe chain cannot be traced to Sofec, the court grants Sofec summary judgment on the contract claims arising from the sale of the failed chain.

In the alternative, HIRI and Griffin request the court to grant them additional time in which to determine the identity of the failed chafe chain. However, in light of both the considerable time that has been available for such discovery (nearly 18 months since the filing of this lawsuit) and the considerable evidence that has been amassed, the request is unpersuasive and without merit. Both HIRI and Griffin have failed to adequately explain to the court the means by which they will uncover the identity of the failed chain. The Eleventh Circuit articulated the appropriate standard under Rule 56(f) of the Federal Rules of Civil Procedure:

> [the party requesting additional time for discovery under Rule 56(f) ] may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but rather he must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact ...

*Wallace v. Brownell Pontiac–GMC Co.,* 703 F.2d 525, 527 (11th Cir.1983).

Although Griffin, in its memorandum of opposition, suggests that the "more prudent and cost effective approach" would be

an extension of time in which to conduct discovery, Griffin ignores the injustice and the cost to Sofec in prolonging a defense of a claim unlikely to produce any evidence. The request for additional time to conduct discovery is denied.

### III. *Tort Liability*

#### A. Strict Products Liability

■ It is a fundamental principle of the law of strict products liability that the plaintiff must prove that the defendant manufactured, distributed, or otherwise sold the product that caused the injury or loss. *See generally Prosser and Keaton on Torts* § 100 (5th ed. 1984). Courts have extended this principle to impose liability upon a manufacturer or an assembler who incorporates a defective component part into its finished product and places the finished product into the stream of commerce. *See Baughman v. General Motors Corp.,* 627 F.Supp. 871, 873 (D.S.C.1985), *aff'd* 780 F.2d 1131 (4th Cir.1986); *see also Kaneko v. Hilo Coast Processing,* 65 Haw. 447, 457, 654 P.2d 343 (1982) (recognizing assembler liability). Strict liability for a defective component is also imposed upon any party, including suppliers and retailers, that "are an integral part of the overall producing and marketing enterprise ..." *Pan–Alaska Fisheries v. Marine Construction and Design,* 565 F.2d 1129, 1135 (9th Cir.1977).

Exxon and HIRI argue that this doctrine of strict liability should be extended to impose liability upon an assembler or a manufacturer for a defect in a replacement part sold by a third party. Without question, their contention has some intuitive appeal in this case, in which the replacement part was identical, in terms of make and manufacture, to the original component that was incorporated in the SPM. Both Exxon and HIRI suggest that HIRI purchased the replacement chafe chain from Bridon, as opposed to other suppliers, because Sofec had purchased the original chain from Bridon.[4] The claim against So-

---

**4.** Substantively, this suggestion is more appropriate to liability under negligence (that is, proximate causation) than to strict liability. Exxon's

claim for liability under negligence is discussed below.

fec under strict liability, however, must fail when considered in light of the purpose(s) of the doctrine of strict liability.

Courts have articulated several justifications for holding suppliers, assemblers/manufacturers, and retailers strictly liable for defective component parts. As the Ninth Circuit explained in *Pan–Alaska,* any integral part of the "overall producing and marketing enterprise ... should bear the cost of injuries resulting from defective products." 565 F.2d at 1135. As a matter of policy, the cost of a finished product should represent, at the very least, the social cost resulting from the product's use. Second, some courts have reasoned that the assembler, among others, has a position in the marketing chain that allows it to exert pressure on the manufacturer of the component part to enhance the safety of the manufacturer's product. *See Vandermark v. Ford Motor Co.,* 61 Cal.2d 256, 37 Cal.Rptr. 896 (1964); *see also Baughman,* 627 F.Supp. at 874. A third justification for imposing liability is that the public has a right to expect that a reputable seller will stand behind its goods, and the burden of accidental injuries is properly placed upon those who market the defective component. Restatement (Second) of Torts § 402(A), comments c, e (1965).

For each of these theories, a position in the chain of title is a critical link for the imposition of liability. Because there is no evidence that Sofec ever held title to the fractured chain, Sofec cannot be held liable under strict liability. First, Sofec did not benefit financially or otherwise from HIRI's direct purchase of the replacement chain from Bridon. HIRI, by eliminating the supply of replacement parts from Sofec's contract, deprived Sofec of revenues that it otherwise would have earned under the terms of the original contract with HIRI. To require Sofec to absorb the social cost of a component part that it did not supply would undermine that economic result endorsed by the Ninth Circuit in *Pan–Alaska.*

Second, assuming that Sofec did not supply the fractured chain, there is no reason for Sofec to pressure Bridon for safer components other than the fact that Sofec is held liable. If the court were to endorse this "reasoning," the court would be justified in imposing liability upon any company that does business with Bridon. As one court has commented:

> While [strict liability in tort] is meant to require manufacturers and sellers to bear much of the responsibility and cost of injuries to consumers resulting from their defective products, it is not meant to impose upon each manufacturer and seller an absolute liability as insurer for all injuries to consumers, regardless of the relation of plaintiff's injuries to the particular defendant's product.

*Southwire Co. v. Beloit Eastern Corp.,* 370 F.Supp. 842, 848 (E.D.Pa.1974). Although the doctrine of strict liability departs from general principles of fault, the doctrine, if it is to have any limits, must be bounded by general principles of responsibility.

Third, it appears that Sofec never represented itself to be the supplier of the HIRI chain. To the contrary, HIRI purchased the replacement chain directly from Bridon, intentionally bypassing Sofec in the chain of supply. Even if Sofec had implicitly endorsed Bridon as an appropriate supplier, the need to preserve a bright line in the law of strict products liability (that is, a chain of title rule) is evident. For example, if an assembler were strictly liable for an "identical" replacement part purchased from a third party, the court would be forced to conduct an inquiry into whether the original and the replacement parts were manufactured by the same company. *See, e.g., Cousineau v. Ford Motor Co.,* 140 Mich. App. 19, 363 N.W.2d 721 (1985) (refusing to impose strict liability where plaintiff could not identify supplier of replacement part). If so, whether the original and the replacement parts were sufficiently similar? *See, e.g., Baughman v. General Motors Corp.,* 780 F.2d 1131 (4th Cir.1986) (refusing to impose strict liability where replacement component differed slightly from original component). If so, whether the original and replacement parts were manufactured utilizing a similar process and similar materials? If so, at what point time did the

endorsement by the assembler of the component manufacturer come to an end, if ever? Each of these questions would have to be answered in order to support liability under an "endorsement" theory, notwithstanding the other justifications for strict liability.

Accordingly, in cases of strict liability, courts consistently have refused to depart from the chain of title rule because it is administrable and equitable. *See Baughman,* 627 F.Supp. at 878 (citing case authority for proposition that failure of component part not supplied by manufacturer does not give rise to strict liability).[5] In this case, Sofec is entitled to summary judgment on the strict liability claims arising from the allegedly defective chafe chain because there is no evidence that Sofec supplied the failed chain. Bridon is also granted summary judgment on Sofec's claim for indemnification and contribution arising from this same issue.

B. Liability Under Negligence[6]

■ Unlike strict liability, however, the rationale for liability under negligence justifies the imposition of liability upon an assembler that negligently fails to test a component part when testing would have revealed the same design defect in both the component and the replacement parts. In this case, there is no reason to adhere to the chain of title requirement when the assembler/manufacturer fails to comply with its contractual and common law duties.

The authority cited by Sofec in its moving papers powerfully supports this conclusion. For example, the district court in *Baughman* emphatically states that liability is only justified when the manufacturer has "had an opportunity to test, evaluate and inspect the component." 627 F.Supp. at 874. The Fourth Circuit in *Baughman* also writes that "a manufacturer can be fairly charged with testing and warning of dangers associated with components it decides to incorporate into its own product ..." 780 F.2d at 1133. Both courts ultimately refused to impose liability because the replacement part differed from the original component part. Again, as the Fourth Circuit reasoned in *Baughman,* a manufacturer "cannot be charged with testing and warning against any of myriad of replacement parts supplied by any number of manufacturers." *Baughman,* 780 F.2d at 1133.

According to Exxon and HIRI there is no danger of charging Sofec with testing an unlimited number of possible replacement parts. Instead, they contend that Sofec should be held liable for its negligent failure to properly test the Sofec chain because such testing would have revealed the same structural flaws in the HIRI chain as well. In a nutshell, Exxon and HIRI allege as follows: (1) Sofec had a duty to conduct impact tests at the chain welds, or cause such tests to be conducted, because the original contract between HIRI and Sofec incorporates rules that require impact tests; (2) evidence that impact tests of the chain welds may have revealed structural defects in both the HIRI chain and the Sofec chain supports the claim that Sofec may not have fulfilled this duty;[7] (3) HIRI's purchase from Sofec was the proximate cause of HIRI's direct purchase from Bridon insofar as HIRI relied upon Sofec's

---

5. The court notes one decision in which a manufacturer has been held "vicariously" liable for a replacement part supplied by a third party. *Morris v. American Motors Corp.,* 142 Vt. 566, 459 A.2d 968 (1982). In *Morris,* the Supreme Court of Vermont explained that because of "commercial realities of automobile sales today.... it was reasonable for the plaintiff to believe that he was dealing with AMC when the original equipment was replaced." 459 A.2d at 973. In the instant case, the evidence indicates that HIRI knew that it was not dealing with Sofec when it purchased the replacement chain directly from Bridon.

6. The claims arising under both negligence and failure to warn are discussed together.

7. In its moving papers, Bridon attached documents indicating that impact tests had been performed on the welds used in Type "C" chafe chains manufactured by Griffin. The documents, however, are inconclusive and, given the evidence provided by the non-moving parties, at best create a material issue of fact as to whether impact tests had been conducted.

determination that Bridon was an appropriate supplier of Type "C" chafe chains. Assuming these allegations to be true, Sofec should remain liable as the manufacturer of a product comprising components manufactured by third parties for its failure to reasonably test those components, regardless of which chain actually broke.

In response, Bridon argues that the negligence claim is more appropriately framed as a claim against Sofec for its design and manufacture of the SPM rather than against Sofec for its sale of an allegedly defective chain. Without conclusive evidence that Sofec sold the fractured chain, Bridon contends that Sofec should not be held liable as the seller of this chain. Bridon's argument, however, creates distinctions where none existed before. With respect to the fractured chain, Sofec does not differentiate between its potential liability as a designer, manufacturer, or seller. Sofec moved for partial summary judgment "as to *any and all* potential liability and damages which may be found to have been proximately caused by an allegedly defective chafe chain." If Sofec had an obligation to conduct certain impact tests on the Sofec chain, or cause such tests to be conducted, and Sofec, in fact, failed to fulfill this obligation, Sofec can be held liable for negligence. Because of HIRI's alleged reliance upon Sofec's expertise when Sofec sold HIRI a chafe chain manufactured by Griffin, the fact that Sofec may not have supplied the fractured chain is not dispositive.

Accordingly, Sofec's motion for summary judgment on the negligence and failure to warn claims is denied. Bridon cross-motion for summary judgment against Sofec arising from the same claims is also denied.